MOSES STRIMLING v. JOHN ANGUS McDONALD
AND OTHERS.[1]

October 15, 1926.

No. 25,738.

**When no ground for appointment of receiver of rents of apartment building pending foreclosure of second mortgage.**

In the absence of physical waste, or other improper and prejudicial conduct on the part of one in the possession and control, as the assignee of the owner, of a mortgaged apartment building, there is no ground for the appointment of a receiver of the rents and profits pending the foreclosure of a second mortgage, where the one so in possession has expended upon the property for taxes, and to apply upon both the first and second mortgage, an amount largely in excess of the net rents and profits received by him.

Mortgages 27 Cyc. p. 1627 n. 7.

See notes in 26 A. L. R. 33; 36 A. L. R. 609; 19 R. C. L. 560; 5 R. C. L. Supp. 1038.
See 19 R. C. L. 319; 3 R. C. L. Supp. 930; 5 R. C. L. Supp. 1032.

Action in the district court for Hennepin county by an assignee to foreclose second mortgage on a Minneapolis apartment house. The Bankers National Bank of Minneapolis appealed from an order, Reed, J., appointing a receiver of the rents and profits pending foreclosure. Reversed.

*Brill & Maslon*, for appellant.

*Leonard, Street & Deinard*, for respondent.

[1]Reported in 210 N. W. 388.

STONE, J.

Action by the assignee thereof to foreclose a second mortgage on a Minneapolis apartment house property, known as Inverness Court. The Bankers National Bank of Minneapolis, hereinafter referred to as the bank, appeals from an order appointing a receiver of the rents and profits pending the action.

There was a first mortgage, originally for $77,000, under the foreclosure of which for the remaining debt of $73,926.45 the period of redemption will expire November 9, 1926. In addition thereto and senior to plaintiff's second mortgage are liens of mechanics and materialmen, said to aggregate nearly $8,000. The second mortgage originally secured a debt of $15,000 which has been reduced to $8,100. On the record, it is at least problematical whether the value of the property is sufficient to pay the first mortgage and liens, to say nothing of the residue of the second mortgage indebtedness. The mortgagors are insolvent.

The bank took possession of the property about January 7, 1925. It did so under a deed from the original mortgagors. Even though that deed be a mere security for a large pre-existing indebtedness, it put the bank in the position of a mortgagor in possession. The fact that it held what may be considered a third mortgage, did not prevent its taking over the mortgagor's right to rents and profits pending foreclosure of the first mortgage. In this state, rents and profits belong to the mortgagor until foreclosure and the expiration of the year of redemption. Marshall & Ilsley Bank v. Cady, 76 Minn. 112, 78 N. W. 978. That result follows from our statute which denies to a mortgage the effect of a conveyance and prevents the mortgagee from recovering possession without a foreclosure. Sec. 9572, G. S. 1923.

When the bank took possession there was default in the payment of taxes and principal and interest under the first mortgage. Since that time it has paid the taxes of 1923 and 1924, aggregating $2,389.44. It has paid on the first mortgage $6,603.42 and to plaintiff on the second mortgage $2,833.73. Finally however it seems to have given up all idea of preventing the foreclosure of the first

mortgage and permitted default thereunder. The most emphasized charges against it are based upon its failure to pay a fire insurance premium and the 1925 tax as required of the mortgagors by the first mortgage. In gross, the bank has paid out for taxes and to apply upon principal and interest of the two mortgages, more than $11,000 and, after deducting cost of maintenance, it has received less than $6,000 net from rents. So it has put into the property over $5,000 more than it has taken out. There is no claim of physical waste nor of mismanagement. It is needless to say more to demonstrate that, under the principles governing the appointment of receivers in aid of foreclosure actions, there was no equity which justified the appointment of one in the instant case. Those principles were discussed and applied in Nielsen v. Heald, 151 Minn. 181, 186 N. W. 299, 26 A. L. R. 29, and Larson v. Orfield, 155 Minn. 282, 193 N. W. 453. A more recent case is Smith v. Ambassador Holding Co. supra, page 437. There we reversed an order appointing a receiver, principally because there was no balance of rents and profits equitably applicable to taxes or prior encumbrances. Here the balance is heavily on the other side, the bank having expended for the protection of the property $5,000 more than it has received net from rents and profits.

Enough has been said to show that the equity of the case is so strongly with the bank that no receiver should have been appointed. Its position is similar to that of the assignee of a public contractor who is given precedence over the contractor's sureties to the extent that the moneys paid by him and secured by the assignment have gone in reduction of claims for which the surety otherwise would have been liable. New Amsterdam Cas. Co. v. Wurtz, 145 Minn. 438, 177 N. W. 664. Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738.

In a case such as this, there being no physical waste or other wrongful conduct of the mortgagor or his assignee in possession prejudicial to the rights of a junior mortgagee, the latter will not be entitled to a receiver, upon the ground that the mortgagors are insolvent and the security inadequate, while the party in possession

has no surplus of rents or other profits which in equity he should apply on taxes or paramount liens. If, as here, the reverse of that situation exists and the assignee of the mortgagor in possession has applied to the protection of the security more than he has taken out of the property in net rentals, there is no equity in appointing a receiver, for plaintiff has already a greater benefit than was legally his.

Order reversed.